1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEVIN & DICTEROW**
William E. Levin, SBN 104631
Steven M. Dicterow, SBN 89371
668 N. Coast Highway, Suite 1264
Laguna Beach, CA 92651
williamlevin@hotmail.com
sdicterow1121@yahoo.com
(949) 613-5131

Attorney for Plaintiff,
P&P IMPORTS LLC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| P&P Imports LLC, a California Limited Liability Corporation | ) **Civ. Case No.:** 8:18-cv-01542 |
| | ) |
| | ) |
| Plaintiffs, | ) **PLAINTIFF P&P IMPORTS LLC'S** |
| | ) **COMPLAINT AGAINST APPLE** |
| | ) **TREE INTERNATIONAL CORP.** |
| v. | ) **FOR 1) COPYRIGHT** |
| | ) **INFRINGEMENT, 2) FALSE** |
| | ) **ADVERTISING, 3) TRADE DRESS** |
| Apple Tree International Corp., and Does 1-10 Inclusive | ) **INFRINGEMENT,** |
| | ) **4) UNFAIR COMPETITION, AND** |
| | ) **RELATED CLAIMS** |
| | ) |
| Defendant. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |
| | ) |
| | ) |

1

Plaintiff P&P IMPORTS LLC ("P&P" or "Plaintiff"), by and through its counsel, alleges for its Complaint against Defendant APPLE TREE INTERNATIONAL CORP. ("Apple Tree" or "Defendant") as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement under federal law, false advertising under federal and California law, trade dress infringement under federal and California common law, unfair competition under federal and California law, and related state claims, based on Defendant's intentional and repeated pattern of unfair competition, and the other wrongful acts of Defendant alleged herein.

## THE PARTIES

### Plaintiff P&P

2.     Plaintiff P&P is a limited liability corporation organized and existing under the laws of the State of California, having a principal place of business at 3233 West Castor Street, Santa Ana, CA, 92704.

### Defendant

3.     On information and belief, Defendant Apple Tree International Corp. is a corporation incorporated and existing under the laws of the State of California, having a principal place of business at 8675 Rochester Avenue Unit A, Rancho Cucamonga, California 91730. On information and belief Apple Tree does business as F2C, Segawe, Zeny, and Smartxchoices despite not having any registered Fictitious Business Names.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. §§ 1331, 1337, and 1338 because the suit arises under the copyright, false advertising, trade dress, and unfair competition laws of the United States, including

17 U.S.C. § 101 *et seq.*, 15 U.S.C. § 1125, and the Court has pendant jurisdiction of any and all state causes of action under 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over the Defendant because, *inter alia*, on information and belief, the Defendant transacts business in the Central District of California, including in Orange County.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and otherwise because a substantial part of the events or omissions giving rise to these claims for copyright infringement, unfair competition, false advertising, trade dress infringement, and related state claims, occurred in this judicial district, including in Orange County.

7.       On information and belief, the Defendant has advertised, sold, and/or distributed the products complained of in this Complaint in this judicial district, and engaged in the wrongful acts alleged herein in this judicial district, including in Orange County.

## FACTS
### P&P'S ACTIVITIES

8.      Plaintiff P&P designs, manufactures, markets, and distributes a wide range of high-quality outdoor lawn game products under its GoSports® brand primarily aimed at the niche outdoor lawn game marketplace. Upon information and belief, a high percentage of consumers in that marketplace are aware of P&P and its GoSports® lawn game products and their good reputations. P&P's high-quality products are carried and sold by large retailers, in-store and on-line, such as Amazon.com, WalMart.com, Wayfair, Houzz and eBay, and are sold in and across the United States, Canada, and the United Kingdom.

### P&P'S BACKGROUND AND HISTORY OF TWO COLLEGE FRIENDS LAUNCHING THEIR DREAM

3

9.      P&P Imports was started from humble beginnings in 2007 by two friends, Peter Engler and Peter Tanoury. The two California natives met in the freshman dorms at the University of Colorado at Boulder and during their senior year hatched a plan to create a company that would design and manufacture innovative consumer products.  Their first product design was drawn on the back of a pizza box and took months to develop, but over the years while their process has become more efficient, their attention to detail has not wavered.  The start was slow, but Peter & Peter were able to organically grow their company from a single product and 0 employees to their current offering of over 250 products and a staff of over 15 employees in its Orange County headquarters.  P&P continually strives to design and market products that bring enjoyment to patrons of all ages. The success of P&P is largely due to their ability to design and develop high quality products that stand above many of the other low-cost alternatives.  P&P employs a full time, in-house design team in their Orange County office who are responsible for P&P's product design, including functional and aesthetic aspects, packaging design, product photography and editing, instructional inserts and advertisements.  A typical product requires hundreds of hours of development time to ensure it will meet P&P's customers' expectations.  In the ultra-competitive world of ecommerce, the product's visual appearance is the modern version of retail packaging that allows customers to associate a product with a brand.  P&P therefore goes to great lengths to ensure their high-quality products have their own unique look to set them apart from the competition. That way, customers searching for P&P's high-quality items can instantly pick them out from the many low-cost alternatives, all of which have a different overall look and appearance from that of P&P's products.

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

10.     P&P has been in this business continuously since about 2007, and the products and TRADE DRESS, defined below, have been in use and sold in interstate commerce continuously since the date set forth below.

11.     As discussed below, Defendant is a direct competitor of P&P in the above described interstate marketplace, including in Orange County, California, and elsewhere in the U.S., and, upon information and belief, copied P&P's copyrighted works and adopted their infringing trade dresses, as defined below, with full knowledge of P&P's copyrighted works and TRADE DRESSES, as defined below, and prior and superior rights to same, and with the knowledge and intent to cause confusion of source or sponsorship as to the parties' respective products, and to profit economically from the commercial exploitation of the copyrighted works without paying the customary price.

### P&P'S COPYRIGHTED WORKS AND PRODUCT WHICH DEFENDANT COPIED IDENTICALLY IN MARKETING DEFENDANT'S PRODUCTS

12.     P&P protects their original works using all available means, including copyrighting their original works, and registering many of such originals.  P&P registers the copyrights in their works in order to prevent unauthorized parties, especially competitors, from using P&P's original works for their own gain. P&P's copyrighted works appear on the internet and in printed materials in connection with the advertising, offering for sale, and selling of P&P's products which embody the copyrighted works.

13.     On or about January 13, 2017, P&P was issued US Copyright Registration Number VA0002013842 entitled "P&P Imports 2016 Lookbook."  A true and correct copy of the copyright registration certificate is attached hereto as **Exhibit 1**. P&P's copyrighted football field artwork ("FOOTBALL FIELD ARTWORK") can be found on page 176 of said Lookbook. Immediately below and

attached hereto as **Exhibit 2** is a true and accurate copy of a picture taken by P&P of their Football Field Cornhole Set product bearing the original FOOTBALL FIELD ARTWORK side-by-side with Apple Tree's F2C brand's product ("INFRINGING FOOTBALL FIELD"). They are identical.



(Image of Exhibit 2)

14.     Since at least as early as January 2018, Defendant began to use, without authority, permission or license, from P&P, P&P's registered copyright to promote, make, and sell Defendant's competing, identical INFRINGING FOOTBALL FIELD across the United States.

15.     Upon information and belief, Defendant had access to the websites in which P&P's FOOTBALL FIELD ARTWORK appear, accessed the websites, located the copyrighted work, saved copies of the work, gave copies of the work to Defendant's manufacturer, placed identical copies of the work onto Defendant's cornhole product, took photographs of the copied works now placed on Defendant's product, packaging and advertisements, uploaded the photographs onto various websites, and physically distributed Defendant's INFRINGING FOOTBALL FIELD product to Defendant's customers.

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

16.     The INFRINGING FOOTBALL FIELD is 100% identical to P&P's in appearance and is intentionally designed and intended to cause confusion to consumers so that consumers are likely to mistakenly believe that they are viewing and buying P&P's products, or at minimum viewing products made from the same source or to the same specifications or that there is some affiliation, relationship, license, endorsement, or sponsorship between P&P and Defendant or their product, or P&P and the Defendant, and upon information and belief is causing actual confusion. Indeed, there can be little, if any, justification for such confusingly similar, and/or substantially identical, packaging and competing trade dress, except to benefit from, capitalize upon, take advantage of, and ride upon the coattails of, P&P's outstanding reputation and goodwill TRADE DRESSES (as defined below) and their secondary meaning and reputations, and their copyrighted works.

17.     On June 20 and 21, 2018, P&P's attorney sent a cease and desist letter to Apple Tree demanding that Defendant stop infringing P&P's registered copyright and TRADE DRESSES. Defendant failed to respond or acknowledge P&P's cease and desist letter and, upon information and belief, continues to willfully sell their infringing products to this day, and to infringe upon the registered, copyrighted works and TRADE DRESSES. Attached hereto as **Exhibit 3** is a true and correct copy of said cease and desist letter. The cease and desist letter was sent both via certified and uncertified mail to two known addresses of Apple Tree, and true and correct copies of the certified mail receipts are attached hereto as **Exhibit 4**.

### P&P'S INFRINGED TRADE DRESSES

18.     P&P has created,  among others, the following trade dresses for its products, including: SLAMMO TRADE DRESS, GIANT FOUR IN A ROW TRADE DRESS, and RED AND BLUE CORNHOLE SET TRADE DRESS, all of which are depicted in **Exhibits 5, 7,** and **9** respectively, attached hereto

7

(collectively, "TRADE DRESSES"). These TRADE DRESSES are described below in more detail and include the overall look and feel of the respective products' design, as shown below in Exhibits 6, 8, and 10, such as the color combinations used, the size, texture, dimensions, shape of individual elements, and the total visual impact of all the foregoing. Especially due to the manner in which the products are marketed and sold on the Internet, P&P's TRADE DRESSES function effectively as the packaging for the products in question.

19.    One of P&P's primary goals has been to build up strong trade dresses for its products, that customers can and will uniquely and strongly associate with their innovative quality products and stellar customer service, utilizing distinctive ornamental product designs to distinguish its products in the marketplace. In this effort, P&P has in the past, and continues to the present, to create new designs with strong branding which have a unique style and look that are separate and distinct from that of any competitors for similar products.

20.    P&P engages in a laborious, and highly creative, design process to create its products and TRADE DRESSES, using a dedicated in-house design team, often spending months to develop new products and their TRADE DRESSES, and marketing materials, including photographs showing the TRADE DRESSES from specific angles, to ensure that the TRADE DRESSES will be differentiated in the marketplace from those of P&P's competitors. That design and creation process has already been described above, and adds to the cost of the product and/or reduces P&P's profit margins for its sales. For a competitor like Apple Tree to be able to infringe on P&P's TRADE DRESSES, gives such a competitor an unfair advantage and also constitutes unfair competition, in that such competitors avoid the design and creation process by copying P&P's TRADE DRESSES.

21.    The design and overall appearance of P&P's products are arbitrary and unusual, and significantly different from products sold by its competitors. These

products deliberately incorporate many individual elements that are non-functional in nature and selected solely or primarily to distinguish P&P's products in the marketplace.  For example, P&P uses special fonts, colors and color combinations, textures, shapes, sizes, and arrangements of individual elements, which serve only to identify its products and their look to consumers, and has been very successful in this effort. There are many alternative designs and packaging available for these types of products, and there is no need for competitors, including Defendant, to copy such trade dresses and the overall look of P&P's arbitrary and unique combination of features, except to ride upon P&P's coattails and marketplace success, and to capitalize upon P&P's reputation and goodwill associated with their products and TRADE DRESSES. Indeed, P&P has many other competitors that sell the same types of products, without copying P&P's TRADE DRESSES.

## SLAMMO TRADE DRESS

22.    On or about June 5, 2015, P&P first placed, in interstate commerce, their Slammo branded roundnet game which was designed from the ground up, both functionally and aesthetically to uniquely identify P&P as its originating source. P&P spent months on design and focus groups to determine its final distinctive bright green, smooth, squared legs and matching bright green balls with contrasting black logo, pipe and track, and clips which are completely unique to P&P's Slammo branded roundnet game and the total visual impression created by that unique combination serve to let the consumer know that they are looking at a high-quality Slammo brand roundnet game from P&P as shown in **Exhibit 5** attached hereto. (the "SLAMMO TRADE DRESS"). At the time of P&P's Slammo branded roundnet game's release, there was nothing in the marketplace bearing any similar trade dress to the SLAMMO TRADE DRESS, to the best of P&P's knowledge.

1
2
3
4
5
6
7
8
9
10
11



(Image of Exhibit 5)

12   23.    In January of 2018, P&P became aware of Defendant's roundnet

13  game which bears identical trade dress to P&P's SLAMMO TRADE DRESS (the

14  "INFRINGING ROUNDNET TRADE DRESS"). Attached hereto as **Exhibit 6** is

15  a true and correct copy of Defendant's INFRINGING ROUNDNET TRADE

16  DRESS side-by-side with P&P's SLAMMO TRADE DRESS.

17
18
19
20



(Image from Exhibit 6)

21
22
23
24
25
26
27
28

10

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress
Infringement, Unfair Competition, etc.

## <u>GIANT FOUR IN A ROW TRADE DRESS</u>

24.     On or about November 2016, P&P first placed, in interstate commerce (for sale on the internet), their Giant Four In A Row game, the total visual impression of which uniquely identifies P&P as its originating source due to its unique and distinctive combination of flat-white colored square board with evenly spaced round-hole cut-outs, bordered by a thin bas-relief bezel on all four sides, with two mirrored sculpted legs extending half way up the sides of the bezel and joined to it by tee joints which enfold part of the bezel to create a statiacciato relief on the bezel and extend depth-wise slightly both frontwards and backwards, and which vertically extend slightly below the bezel where they are joined with the feet to create statiacciato relief between them on the outside edge, the feet extend depth-wise from the legs with their flat-top extending into rounded shoulders and squared ends with an arch type shape cut into the bottom-center, which are all contrasted with the smooth, circular flat-red and flat-blue featureless chips game pieces as shown in **Exhibit 7**, attached hereto (the "GIANT FOUR IN A ROW TRADE DRESS").



(Image of Exhibit 7)

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress
Infringement, Unfair Competition, etc.

25.    On or about January 2018, P&P became aware of Defendant's giant four in a row game which bears identical trade dress to P&P's GIANT FOUR IN A ROW TRADE DRESS (the "INFRINGING FOUR IN A ROW TRADE DRESS"). Attached hereto as **Exhibit 8** is a true and correct copy of Defendant's INFRINGING FOUR IN A ROW TRADE DRESS side-by-side with P&P's GIANT FOUR IN A ROW TRADE DRESS.

 

(Image from Exhibit 8, Defendant's is on the left side)

### RED AND BLUE CORNHOLE SET TRADE DRESS

26.    On or about August 2016, P&P first placed, in interstate commerce (for sale on the internet), their Red and Blue Cornhole Set. Its total visual impression uniquely identifies P&P as its originating source due to its distinctive and unique combination of a silver metal border covering the outside edges of the board, contrasting flat-grey corners, and which wrap up over the top side of the board to create a thin silver, metallic border around the perimeter of the top side of the board with contrasting flat-grey corners, contrasting with a thin white border around the inside perimeter of the top side of the board, and which extends triangularly from the bottom-end into an unfinished pyramid capped with a circular hole outlined in white near the top-end of the board, the remaining area between the

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

border and pyramid are contrasted with red color on one board and blue color on the other, as shown in **Exhibit 9** attached hereto, (the "RED AND BLUE CORNHOLE SET TRADE DRESS") and which is completely unique to P&P's Red and Blue Cornhole Set and has been used thereon exclusively, and extensively since 2016.



(Image of Exhibit 9)

27.     On or about January 2018, P&P became aware of Defendant's cornhole game which bears identical trade dress to P&P's RED AND BLUE CORNHOLE TRADE DRESS (the "INFRINGING CORNHOLE TRADE DRESS"). Attached hereto as **Exhibit 10** is a true and correct copy of Defendant's INFRINGING CORNHOLE TRADE DRESS side-by-side with P&P's RED AND BLUE CORNHOLE TRADE DRESS.



(Image of Exhibit 10, Defendant's is on the right side)

13

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

28.  P&P's TRADE DRESSES, as defined above, symbolize the business goodwill of P&P, and each one is an intangible asset of substantial commercial value.

29.  One of P&P's primary goals has been to build up strong trade dresses that its customers can and will associate with P&P, its superior quality products, and its outstanding customer service.

30.  As a result of P&P's long usage and extensive advertising and marketing of its TRADE DRESSES, the consuming public and others, have come to recognize P&P's TRADE DRESSES in their respective niches, as symbolizing P&P, and their reputation, as the source of P&P's goods and services. The TRADE DRESSES are both inherently distinctive, inasmuch as the products' color combinations serve as product design, and have also acquired secondary meaning in the products' niche marketplace.

31.  Since the founding of P&P, long prior to the acts of Defendant herein alleged, whenever possible, P&P has used their distinctive and unique TRADE DRESSES alone in connection with the promotion, marketing and advertising of their respective products and services for sale in the United States, including this District.

32.   Sales, advertising and promotion of P&P's product and services which use their unique and distinctive, and non-functional, TRADE DRESSES, since inception of the business, have been substantial in P&P's niche marketplace.

33.  As a result of such continuous, long, and substantially exclusive use, and extensive sales, substantial advertising and promotion, of the products and P&P's TRADE DRESSES, P&P's products and services associated with them enjoy recognition and notoriety in the United States in P&P's niche market place and are recognized by the consuming public as emanating from P&P, or, at the very least, a single and unique source in the marketplace, and have acquired secondary meaning in the marketplace to P&P's customers and to many potential customers.

14

## **DEFENDANT'S WRONGFUL ACTIVITIES**

34.     Upon information and belief, Defendant is part of a much larger company – or groups of companies (with common ownership) – than P&P with a vast product selection and which operates by identifying top selling products in certain categories then rushes out low quality knockoffs, or copycat products, which it imports in large volumes from China. Rather than spend the time and money to create their own designs and trade dresses, Defendant's copycat products look identical to the top-selling products Defendant knocks-off, as they make no attempt to differentiate their own brand, but rather seek to ride the coattails of other successful products through unfair means. Upon information and belief, this is Defendant's normal business pattern and practice, in which they engage intentionally, and with gross disregard to the rights of other competitors whom they copy, including P&P.

35.     Defendant market and sell their knockoff products through the same marketing and sales channels as P&P, including on the internet and through internet retailers, and to similar retailers as P&P, such as Amazon and eBay.

36.     Upon information and belief, Defendant's statements and claims are false and misleading as to material facts which would and could significantly affect the consumers' decision to purchase Defendant's products rather than those of their direct competitor, P&P, and have caused and will continue to cause, injury and damage to P&P, including  but not limited to diverting profits to Defendant which would otherwise have gone to P&P, and, in addition, rewarding Defendant by profits directly attributable to such acts of copyright infringement, false advertising, unfair competition, and trade dress infringement.

37.     Upon information and belief, said Defendant's products, packaging, promotional materials, and advertisements, contain other intentionally false and misleading statements, as will be shown during discovery in this lawsuit, such as

representations of P&P's products and their TRADE DRESSES being used to advertise, promote, and sell Defendant's competing products.

### Intentional Copying and Use of P&P's TRADE DRESSES

38.    On information and belief, Defendant was fully aware, prior to their activities complained of herein, of P&P and P&P's products, services and marketing activities, along with their success and reputation in the foregoing niche marketplace. In fact, P&P's attorney sent Defendant Apple Tree a cease and desist letter on June 20, 2018, notifying Defendant of their infringements of P&P's TRADE DRESSES and copyright. (Exhibit 5). Defendant never responded.

39.    Defendant has made little, if any, effort to differentiate their products or trade dress in the marketplace from P&P's products and TRADE DRESSES, but instead have demonstrated their bad faith and intent to confuse customers and potential customers and others in the marketplace into thinking that Defendant is the Plaintiff or is affiliated in some way with them.

40.    Defendant's identical copying of P&P's products and TRADE DRESSES also leads customers to think Defendant's products are made at the same factory to the same specifications when in fact Defendant's products are of inferior quality and are not made at P&P's factories or made to P&P's higher standards.  A customer browsing through e-commerce marketplaces would not be able to determine that differentiation due to the exact copying of P&P's TRADE DRESSES and product design and therefore would think they could purchase Defendant's knockoffs at a lower price and receive an item made to the same specification as P&P's products. Customers likely also wrongly ascribe the inferior quality of Defendant's products to P&P because of the inability to differentiate the products or their sources.

41.    Potential customers and the general public who see Defendant's products being used post-sale by their purchasers will likely be confused as to the

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

source of the products, wrongly believing the products came from P&P instead of Defendant.

42.     Defendant uses confusingly similar trade dresses and will continue to do so until and unless enjoined by this Court.

43.     Defendant's concurrent usage of the identical products and the infringing trade dresses in the same interstate marketplace for the same goods and services is likely to cause confusion as to the source of the goods, services, or businesses, or that there is some affiliation, license, sponsorship, approval or endorsement between P&P and their business, goods, and services, and Defendant's business, goods, and services.

### Intentional Conduct

44.     Numerous factors and evidence also indicate that Defendant has intentionally adopted and are using a confusingly similar trade dresses for the purpose of causing confusion and trading on P&P's prior usage, rights, and reputation and goodwill; riding on P&P's coattails. Because Defendant is located in the same geographical area as P&P and in the same industries of outdoor lawn games and pool floats, it is virtually certain that Defendant was fully aware of P&P's prior use and rights when they began to sell identical products and use identical trade dress in the same area and market.

45.     On several occasions, P&P has had Amazon.com take down Defendant's product pages which infringe on P&P's TRADE DRESSES. However, soon after one of their infringing products is taken down, Defendant circumvents the takedown by creating new vendor accounts with new advertisements and product pages to continue selling their infringing products.

46.     Defendant even copies P&P's product descriptions and uses them as their own for their products. Attached hereto as **Exhibit 14** is a true and correct copy of Defendant's ebay™ product listing for Defendant's infringing Giant 4 in a

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

Row game (See below for actual confusion caused by this particular product listing). This is just one of many examples of such conduct.

### Evidence of Actual Confusion

47.    Defendant's copying of P&P's products and TRADE DRESSES is so extensive that one of Defendant's disgruntled customers who purchased Defendant's Black Cornhole Set (image below) left a very negative review about its terrible quality on P&P's Amazon.com product page for P&P's BLACK CORNHOLE SET despite the two products appearances being markedly different. Attached hereto as **Exhibit 11** is a true and correct copy of the very negative review. Attached hereto as **Exhibit 12** is a true and correct copy of Defendant's Black Cornhole Set side-by-side with P&P's BLACK CORNHOLE SET.



(Image of Exhibit 12, Defendant's is on the right)

48.    Another example of actual customer confusion of Plaintiff and Defendant occurred in February of 2018. A customer contacted P&P wanting to buy red and blue replacement coins for P&P's Giant 4 in a Row as listed on Amazon. P&P provided the customer a hyper-link to their product page, and the

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress
Infringement, Unfair Competition, etc.

customer purchased the coins. The customer, unbeknownst to her, also purchased what she thought was P&P's Giant 4 in a Row, which as it turns out was actually Defendant's identical giant four in a row game. After taking delivery of the two products, the customer contacted P&P confused as to why the coins were not the same as the coins that came with the game. The customer thought she had bought only P&P products; P&P's Giant 4 in a Row, and coins. Attached hereto as **Exhibit 13** are true and accurate communications and order information from same customer to P&P. (Redacted for personally identifying information).

49.     Defendant's use of the identical products and infringing trade dresses constitute an infringement of P&P's common law and statutory rights under U.S federal law, including but not limited to Section 43(a) of the Lanham Act, and under California law, unfair competition, and false advertising, and appears to be an intentional infringement of P&P's rights.

50.     P&P have demanded that Defendant stop the wrongful activities complained of herein. (Exhibit 5). This demand was in an effort to avoid litigation, and Defendant was advised that a lawsuit would be filed if Defendant failed to stop such wrongful activities. Instead of moving to remedy P&P's claims, Defendant instead continues their copying of P&P's products, product descriptions, and TRADE DRESSES and ignoring P&P.

51.      It seems apparent that Defendant fully intends to, and will, continue all of their wrongful activities until and unless enjoined by this Court. While P&P have complained to Defendant of their unfair, infringing, harmful and illegal activities, Defendant has willfully failed, and/or refused, to stop their wrongful activities.

52.     Defendant continues to falsely advertise their identical products.

### P&P's Damages, Restitution, and Economic Harm

53.     Upon information and belief, as a direct and proximate result of

19

Defendant's wrongful activities, P&P has suffered actual damages in an amount yet to be determined, including but not limited to damages to P&P's reputation, loss of good will, lost sales and revenues, increased consumer search costs, diminution in the value of P&P's business, and lost sales of P&P's related products as a result of Defendant's infringing activities, and subject to proof at trial and future retention of expert witnesses regarding such damages and other damages set forth in this complaint.

54.    Upon information and belief, as a direct and proximate result of Defendant's wrongful activities, P&P will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined, but believed to be in excess of one hundred thousand dollars, $100,000.

55.    Upon information and belief, as a direct and proximate result of Defendant's wrongful activities, Defendant has made gross sales (and profits thereon) from their wrongful activities as alleged herein, which belong in equity and should be turned over to P&P, both as unjust enrichment from Defendant's wrongful acts, and/or as a measure of P&P's damages.

56.    P&P believes, based on such items as feedback from its customers, that it has many repeat customers for its products and services.  That is, customers who purchase its products are also likely to purchase other products in the future from P&P. Similarly, customers who purchased Defendant's products which used the TRADE DRESSES, perhaps in the belief that they were P&P's products, are likely to purchase other of Defendant's products. As such, P&P have lost sales as a direct result of Defendant's infringement, because Defendant's customers are likely to purchase other of Defendant's products. Accordingly, P&P have additional lost sales as a direct result of Defendant's infringement. Not only would Defendant generate such additional sales of their other products, making additional profits due

20

to the initial infringement, but P&P would also lose sales of other products it would otherwise have sold the same customer(s) but for the initial infringing sale. Each sale of a product by Defendant creates a lost sale for P&P for their products and services, and there is a multiplier effect from each such lost sale for the reasons stated.

57.     As a direct and proximate result of Defendant's wrongful activities, P&P have been forced to hire attorneys to defend and enforce their rights and to bring the present lawsuit, and to incur costs to prosecute this lawsuit, and has obligated itself to pay attorneys' fees and litigation costs to pursue this lawsuit against Defendant.

58.     Upon information and belief, and subject to discovery and testimony, the foregoing damages will exceed $2,000,000.

59.     Defendant' acts have caused and will continue to cause irreparable harm to P&P unless restrained by this Court. P&P has no adequate remedy at law. Accordingly, P&P is entitled to an order enjoining and restraining Defendant, during the pendency of this action and permanently thereafter, from manufacturing, distributing, importing, exporting, marketing, offering for sale or selling the infringing products or services, continuing to unfairly compete with P&P, continuing to falsely advertise their products or services, and continuing to otherwise engage in the wrongful acts complained of herein.

60.     In addition, the sales and profits which P&P would have otherwise made from customers who were illegally diverted to Defendant for all P&P's products which were copied by Defendant. Such diverted sales and profits should be returned to P&P as the true owner thereof, both as damages, and as a form of restitution of P&P's property which was acquired by and through Defendant's wrongful acts, including the false advertising, the trade dress infringement, and unfair competition. P&P has an ownership interest in its intellectual property, such

21

as their TRADE DRESSES, goodwill, and reputation which Defendant usurped and profited from directly by their wrongful acts complained of herein.

## CLAIMS FOR RELIEF

### Count 1

### (Copyright Infringement under Federal Law)

61.     P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 60 of the Complaint as though fully set forth herein.

62.     P&P's works are original works that may be copyrighted under U.S. law under 17 U.S.C. § 101 *et seq.*, and P&P have registered the copyrighted works as alleged previously.

63.     P&P is the sole owner of the copyrighted works and are in compliance with the copyright laws.

64.     Defendant's use of the copyrighted work is without any license or permission from P&P.

65.     Defendant's above described actions and wrongful activities constitute infringement of P&P's copyrights, in violation of 17 U.S.C. § 106, all to the damage of P&P as alleged herein.

### Count 2

### (False Advertising Under the Lanham Act)

66.     P&P repeats and incorporate by reference the statements and allegations in paragraphs 1 to 65 of the Complaint as though fully set forth herein.

67.     Defendant' actions, as set forth above, constitute false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125, all to the damage of P&P as described herein.

68.     The Defendant engage in false advertising by virtue of their confusingly similar products and product descriptions which create the false or

misleading belief that there is some affiliation, license, sponsorship, or endorsement between P&P and Defendant, or their products or services.

## Count 3

### (Unfair Competition, False Advertising, and Unfair and Deceptive Trade Practices - California Common Law)

69.     P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 68 of the Complaint as though fully set forth herein.

70.     Defendant's acts, as set forth above, constitute unfair competition, unfair and deceptive practices, and false advertising under the common law of the State of California.

## Count 4

### (Unfair Competition, False Advertising, and Unfair and Deceptive Trade Practices – California Statutory Law)

71.     P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 70 of the Complaint as though fully set forth herein.

72.     Defendant's acts, as set forth above, constitute unfair competition, unfair and deceptive practices, and false advertising under the California Unfair Competition Law, Cal. & Bus. Prof. Code § 17200, *et seq*., and false advertising under Cal. Bus. & Prof. Code § 17500 *et seq*. all to the damage of P&P as previously alleged.

## Count 5

### (Trade Dress Infringement under Federal Law)

73.     P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 72 of the Complaint as though fully set forth herein.

74.     Defendant's above described actions and wrongful activities constitute infringement of P&P's TRADE DRESSES as used in connection with its above described products in the above described niche marketplace, in violation of the

23

Lanham Act, 15 U.S.C. § 1125, all to the damage of P&P as alleged herein.

## Count 6

### (Trade Dress Infringement under California Law)

75.     P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 74 of the Complaint as though fully set forth herein.

76.     Defendant's above described actions and wrongful activities constitute infringement of P&P's TRADE DRESSES as used in connection with its above described products in the above described niche marketplace, in violation of California common law, all to the damage of P&P as alleged herein.

Such claims are allowed under California common law. *See, e.g., Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560 (C.D. Cal. 1994) (Claim 6 is common law trade dress infringement); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC ANX, 2013 WL 655314, at *12 (C.D. Cal. Feb. 21, 2013) (recognizes claim under common law, though claim dismissed for failure to oppose dismissal); *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602F.3d 1108, 1112 (9th Cir. 2010) (recognizes common law trade dress infringement); *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1045 (9th Cir. 1998) (recognizes common law trade dress infringement); *See generally*, W. Levin, 1 Trade Dress Protection §10:9.

## Count 7

### (Unfair Competition under the Lanham Act)

77.     P&P repeats and incorporate by reference the statements and allegations in paragraphs 1 to 76 of the Complaint as though fully set forth herein.

78.     Defendant's above described actions and wrongful activities constitute unfair competition with P&P, and an ongoing pattern of unfair competition, all to the damage of P&P as alleged herein.

79.     Defendant's wrongful use of the TRADE DRESSES falsely indicates

to consumers that Defendant's products originate from, are approved by, are sponsored by, are licensed by, or are affiliated with P&P or are otherwise associated with their services or products.

80.    Defendant's wrongful use of the TRADE DRESSES in the manner described above is likely to cause and has likely caused confusion, is likely to cause and likely has caused initial interest confusion, is likely to cause and likely has cause post sale confusion, is likely to cause and likely has caused mistake, and/or is likely to deceive and has likely deceived customers and potential customers of the parties by suggesting some affiliation, connection, or association of Defendant with P&P.

81.    Defendant's actions, as set forth above, constitute trademark infringement of non-federally registered trade dress, and constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, all to the damage of P&P as described herein and previously alleged.

## INJUNCTIVE RELIEF

82.    P&P also seeks to enjoin, permanently, Defendant and their agents and representatives from each and every one of the wrongful activities alleged herein, including but not limited to falsely advertising, unfairly competing, using P&P's TRADE DRESSES, or copying its products or services, or any other wrongful activities of the type alleged herein during the pendency of this action.

## DAMAGES AND RESTITUTION

83.    P&P repeat and incorporate by reference the statements and allegations in paragraphs 1 to 82 of the Complaint as though fully set forth herein.

84.    As a direct and proximate result of Defendant's wrongful conduct, P&P have suffered and will continue to suffer until Defendant is enjoined, the following damages, and those alleged above and below:

A.     Actual damages, including but not limited to loss of sales, and reputation damages, in an amount to be determined at trial and after discovery and testimony, but believed to be in amount of not less than $2,000,000.

B.     Enhanced damages for willful infringement, including up to three times P&P's actual damages (treble damages).

C.     Defendant' sales and profits as a measure of P&P's damages or as equitable disgorgement, in an amount to be determined at trial and after discovery and testimony, but believed to be in amount of not less than $1,000,000.

D.     Alternatively, statutory damages, for each work infringed, under 17 U.S.C. § 504 in lieu of actual damages for copyright infringement.

85.     Upon information and belief, Defendant knew that their unauthorized use of the TRADE DRESSES, copyright infringement, and the false advertising and unfair competition as to their directly competing products, would result in an undue benefit to Defendant.

86.     Defendant's unauthorized and confusingly similar use of the P&P's intellectual property, and their unfair competition, false advertising, copyright infringement, and other wrongful acts, unjustly enriches Defendant at the expense of P&P's reputation and goodwill, in an amount to be determined at trial and subject to discovery and testimony, but believed to be in amount of not less than $1,000,000.

87.     The cost of a corrective advertising campaign in an amount to be determined at trial and subject to discovery and testimony but believes to be in amount not less than one hundred thousand dollars, $100,000.

## ATTORNEY'S FEES

88.     This is an exceptional case, and one of willful, deliberate, or intentional infringement, such that P&P are entitled to an award of attorney's fees

under the Lanham Act, 15 U.S.C. § 1117(a), the federal copyright laws and other relevant federal and California statutory law, which, through trial, are expected to exceed $ 300,000 (300 thousand dollars).

## PUNITIVE DAMAGES

89.     P&P are entitled to punitive damages under California law as a result of Defendant's wrongful acts as alleged herein, which are fraudulent, malicious, and oppressive, and with reckless disregard for the rights of P&P, in violation of Cal. Civil Code § 3294, which are expected to be sought in an amount of at least $5,000,000 (five million dollars).

## PRAYER FOR RELIEF

WHEREFORE, P&P ask that this Court grant judgment against Defendant for the following relief:

A.     Defendant, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, be temporarily restrained, and permanently enjoined from its continuing wrongful acts, including but not limited to the following:

i.     Using the Infringing trade dresses, or any other confusingly similar designation, or any confusingly similar trade dress, in connection with their products, or related goods or services, or infringing upon P&P's TRADE DRESSES.

ii.     Competing unfairly with P&P in any manner, including continuing to falsely advertise untrue, deceptive, and misleading facts and statements and claims about their products.

iii.     Conspiring with, aiding, assisting, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) and (ii) above.

B.     Defendant, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, deliver for

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.

destruction, or show proof of destruction of, any and all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other materials in its possession or control that depict or reference the infringing trade dress or any other confusingly or substantially similar trade dress, and any materials or articles used for making or reproducing the same, as provided by 15 U.S.C. § 1118.

C.    Defendant file with the court and serves on P&P, within 30 days after the entry and service on Defendant of an injunction, a report in writing and attested to under penalty of perjury setting forth in detail the manner and form in which Defendant have complied with the provisions of subparagraphs (A) and (B) above.

D.    P&P recover all damages it has sustained as a result of Defendant's infringements and unfair competition and other wrongful activities.

E.    P&P be awarded treble damages under 17 U.S.C. § 1117(b), and/or statutory damages under federal copyright laws for each work infringed, for willful infringement up to the statutory maximum of $ 150,000 per work or the maximum allowed by law, or actual damages to the extent higher.

F.    P&P be awarded punitive damages under California law.

G.    An accounting be directed to determine Defendant's profits resulting from their infringements and unfair competition and that the profits be paid over to P&P, increased as the court determines is appropriate to the circumstances of this case.

H.    Alternatively, P&P be awarded statutory damages under 17 U.S.C § 504 in lieu of actual damages sustained for copyright infringement.

I.    The court declare this case an exceptional case of willful, deliberate, or intentional infringement, and award Plaintiff its reasonable attorney fees for prosecuting this action pursuant to 15 U.S.C. § 1117(a), and as the prevailing party on the claims, and as otherwise allowed by law.

J.    P&P recover its costs of this action and pre-judgment and post-

28

judgment interest, and attorneys' fees, to the fullest extent allowed by law.

        K.     Defendant be required to recall all inventory of infringing products or services.

        L.     P&P receive all other relief that the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

     P&P hereby demand a trial by the jury on its claims herein and all issues and claims so triable in this action.

Respectfully submitted,

Dated: August 28, 2018

**LEVIN AND DICTEROW**

By: */s/ William E. Levin*
    William E. Levin
    Attorneys for Plaintiff,
    P&P IMPORTS LLC

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress
Infringement, Unfair Competition, etc.

**Exhibits to Complaint**

| Exhibit No. | Description |
|---|---|
| 1 | US Copyright Registration Number VA0002013842 entitled "P&P Imports 2016 Lookbook." |
| 2 | Picture taken by P&P of their Football Field Cornhole Set product bearing the original FOOTBALL FIELD ARTWORK side-by-side with Apple Tree's F2C brand's product. |
| 3 | June 20, 2018, Cease & Desist letter sent to Defendant. |
| 4 | Certified mail receipts for the June 20, 2018, Cease & Desist letter. |
| 5 | SLAMMO TRADE DRESS. |
| 6 | Defendant's infringing trade dress side-by-side with P&P's SLAMMO TRADE DRESS. |
| 7 | P&P's GIANT FOUR IN A ROW TRADE DRESS. |
| 8 | Defendant's infringing trade dress side-by-side with P&P's GIANT FOUR IN A ROW TRADE DRESS. |
| 9 | Image of RED AND BLUE CORNHOLE SET TRADE DRESS. |
| 10 | Defendant's infringing trade dress side-by-side with P&P's RED AND BLUE CORNHOLE SET TRADE DRESS. |
| 11 | Confused customer review. |
| 12 | Image of Defendant' Black Cornhole Set side-by-side with P&P's BLACK CORNHOLE SET. |
| 13 | 2nd confused customer. (REDACTED). |
| 14 | Copied product descriptions. |

P&P's Complaint for Copyright Infringement, False Advertising, Trade Dress Infringement, Unfair Competition, etc.